It's about to call the calendar, call the first case, I'm informed all parties are here, so let me turn to Marcel Fashions v. Lucky Brand Dungarees. Thank you. Good morning, Your Honors. May it please the Court, I am Robert Greener. I am the attorney for the plaintiff appellant, Marcel Fashions. The plaintiff appellant has raised three main arguments on its appeal as to why the lower court decision was in error and should be reversed and the judgment, pardon me, the second amended complaint reinstated. The first and principal one is that the language of the release and waiver contained in the 2003 settlement agreement does not absolve the defendant appellees from liability for future infringing conduct as the court held in its decision in the lower court. And yet this settlement wasn't part of the trial, was it? It was not part of it. What happened to the settlement in all these intervening years? That's a great question, Your Honor. Thank you. In the 2005 case, it was raised. The release and waiver was raised in at least five different instances. One was in a motion to dismiss pre-answer. The second was actually in an affirmative defense that was contained in the answer, which was filed after the motion was denied by the lower court. It was again raised in 2006 and 2009, both in applications for summary judgment and for an injunction. And then again, it was raised at the time that they had prepared the joint pretrial statement to be filed before the trial. The defendant appellees chose to waive that defense at trial. Whatever reason. They didn't press it. No, they did not. They did raise it. It was before the lower court. Your argument is that because they did that, because it was an issue in that earlier case, and then they abandoned it, that normal principles of race judicata apply. Absolutely. There should be a stop from bringing it up. Yes, Your Honor. I think she also based it mistakenly on Florida contract law, which I don't think applies here at all. I think this is clearly federal procedural law. My only question is normally race judicata comes up in the affirmative case, right? It comes up in whether claim can be brought in the first instance and not whether a defense is subject to race judicata. Do you have any . . . I mean, is Clark controlling on us? I think this is a very unique situation. I would refer the court to the two cases that I cited, which was Travelers and McCurdle v. Hadid, where the issue of the affirmative defense being waived was clearly raised in those two cases, and it was found that because they either could have or should have raised it, because it was relevant to the issues that were being decided in the trial, that it was deemed waived for that purposes. And I think this was . . . Waiver is one thing. Race judicata is another. Claim preclusion pertains to claims, or here defenses, whether they are actually litigated or could have been litigated. Yes, that's true. And here, I don't think there's any doubt that this defense could have been raised. Absolutely. In fact, it was raised, and then it was abandoned. Absolutely. Yes, and I think in that case, then there should be issue preclusion on that issue, because I think it's not only central to that case, but it's also . . . The 2010 judgment became precedential in this case, where there was a finding of post-2003 trademark infringement. And I think that's been ignored. That's the finding after the trial. Yes, yes. And I think that was ignored by the lower court, and I think it's ignored in Defendant Appellee's brief. They've completely missed the point that in 2010, when that judgment was entered, and it was not appealed, they accepted the finding, which was a trademark infringement, reverse confusion, and that became precedential. And those were brand-new, post-2003 infringements. They were not related back. And I think a lot of the problem in the argument is that Defendant Appellee's focus on when the trademarks were registered, and that's not relevant. It's when the infringing act occurred, and I've cited several cases in my briefs . . . Yes. Judge LaValle's opinion. Yes. And I think that reasoning, even though it applied to whether the judgment itself was res judicata, I think applies here as well to the settlement agreement, whether or not that issue is precluded as well. Well, if there's ever a case . . . I grew up in New Haven. Didn't that trial involve some trademarks that were registered after the Florida settlement agreement? That actually was two combination marks that the lower court held were so similar because they combined two pre-existing marks and to create a new one that was relevant and related back. It was registered later, and the settlement agreement didn't cover marks that were registered later. So, it wouldn't have been a defense. Yeah, that's true. But the court, in its decision that's in front of the court today, related that to the fact that those two marks were combination marks of pre-2003 registered marks, and therefore they should be considered the same and not new marks. You were claiming that they were registered later. They were registered later, yes. And how can you then say the settlement agreement is a waiver as to those marks? Well, it was more than just those marks, Your Honor. There were, I think, at the end in the final judgment, 12 marks. Most of those, I think 10, were the pre-2003 registered marks. So, the finding in 2010 not only related to the new marks, but it also related to the pre-2003 marks. I think they eliminated several marks, and it's contained in an appendix to the judgment where it's listed. And counsel admits in their brief that in 2005, the case not only included the new registered marks, but also the previously registered marks, and that was admitted in their papers, which is contained in the appendix. What happened, as I understand it, in the 2005 case, I guess it was tried in 2009, was it? Yes. Yeah, 2009. The issue there was whether Marcel can enjoin Lucky Brands from using Get Lucky, Lucky, Lucky Brand, or any use of the word lucky in a mark. Yes. And Marcel got the verdict. Your client got the verdict for that. Yes, Your Honor. On that basis. Yes. And that was for all the uses of the marks after 2003, right? That's correct. But some were registered later, I guess, after the verdict of this case? Oh, no, no. None were registered after the verdict of the case. They were all registered. The ones in question were registered between 2003 and 2005. But were the ones that were registered between 2003 and 2005 incorporated into the 2005 case? Yes. Yes. So the marks that are at issue in this litigation are the same marks that were at issue in the 2005 case? That is correct, Your Honor. I see. Counsel, your time has expired, but you reserved three minutes for rebuttal. I did, Your Honor. Thank you. We'll hear from Lucky. Good morning. Good morning, Your Honors. I may please the Court. I'm Dale Sindally of Kirkland & Ellis Counsel for the Appellees. We believe that this case should be affirmed for the simple reason that the settlement agreement bars litigation of these claims today. You abandoned that defense in the other case that went to trial. No, we didn't, Your Honor. You raised it all the way through, but then at the end there was no – that was not part of the final decision or order? No, Your Honor. We – two reasons. One, we did not abandon it. It was raised initially in the 2005 case. The judge said she couldn't tell because there were so many marks at issue in that case. Exactly. And so she let it go and said raise it later. She did, but – And then you didn't. That's correct. But it doesn't matter that it wasn't raised later. And I'll explain why. And to be clear, our opponents admit, contrary to what opposing counsel just said, is that Lucky Brand failed to raise the defense at trial. In other words, it was raised initially. It wasn't raised again. So there wasn't a final judgment. So we know already from that there's no issue of issue preclusion. So the issue becomes claim preclusion. There's no claim preclusion because the claims are different. And we know that because that was the whole basis of the previous appeal before this court. In the previous appeal before this court, Lucky Brand unsuccessfully tried to argue, well, that prior trial that ended in 2010 was it and resolved everything from all time. And what this court wrote in the most recent opinion of this court said, no, because the trial just dealt with claims from the 2003 to the 2010 period. Claims after 2010 were different. But those claims are the same marks. They were just later infringements. But they're not the same marks and they're not the same infringements for two fundamental reasons. They're different infringements because they're subsequent in time. And that's what Judge LaValle said. Right. And that's the big difference. And that's why the Supreme Court's decision in Davis is right on point. The reason is it's a matter of trademark law. Trademark law. What might be infringing in 2010 might not be infringing in 2017. Why? Well, because the facts and circumstances may be different. The facts and circumstances are who has the mark? No. Who has the right to use the mark? No. Your Honor, their only mark is get lucky. There's no issue that they have marks to lucky brand or any of our marks. The verdict in the 2005 case said for, was that Marcel can enjoin your client from using lucky, get lucky, lucky brand, or any use of lucky in a mark. That's more than just get lucky. And you're right, Your Honor, except that the Second Circuit in the most recent opinion said it was unclear as to which marks were at issue by the jury's verdict, what the jury found infringing in 2010. So let me take, say, three key factual reasons why you can't say that there's claim preclusion. One, even though the marks that they're now suing on were a subset of those marks, the jury verdict, as this Court has found, was not clear as to which marks the jury found infringing. That's the law of this case and the law of this Circuit's decision. Second, this Court's prior decision said that the new claims, the claims in this case, arose after 2010, though even if they involve some of the same marks. You're talking about Judge LaValle's opinion? Correct, Your Honor. Because I thought he said that to assume that the judgment in 2003, the lump sum payment which you alluded to when you first took the podium, would last forever into the future was just wrong. And we're not arguing that it's just wrong. What we're trying to say is that in the opinion, in the appendix at A31, the Court said in this case, the new case before Your Honors, the claims arose subsequent to the earlier judgment. And those claims will be tested, though we think they'll be dismissed because of the settlement agreement, or should be. But under normal trademark law, they have to be proved up. There's no prior, Judge LaValle in the previous opinion said it's sheer speculation as to know what the jury was intending as to which claims infringe. Plus which, the situation is different. What were the advertisements? Did Lucky take an appeal for clarification from the jury verdict? No, it didn't. But the case went on, nor did Marcell. All the parties left. But they won. They won. I mean, normally you don't appeal if you win. You're right about that. But what the problem is, the jury verdict from 2005 remained what it is. And when in the last appeal Lucky Brands tried to use that to argue res judicata for subsequent acts from 2010 to now, saying that that was decided, this court properly found it wasn't decided, that the current lawsuit has different claims for a different period of time. Because it's different claims for a different period of time, we're entitled to reserve. The distinction between infringement and ownership of the mark, the ability to enforce the mark. And the ability to enforce the mark was what was determined in the 2005 litigation. And it was determined against you. But under, well, no, Your Honor, two reasons that's not true with respect. One reason. But, Your Honor, again, Judge LaValle's previous opinion wrote that it's sheer speculation, and that's what Judge Swain quoted, as to what marks the jury found to be infringing. Number one. Two, even if that were not the case, we're talking about different claims. And that's why the Davis case is important, because it's a different part of time. I'm a trademark lawyer. If I'm using the mark today, we all know the Polaroid factors. Your Honors have written many decisions applying them. They look to, well, how well known are the respective marks? Over time, the relative knowledge of those marks may be different. What are the advertisements like? What are the channels of trade like? All these things may change in the Polaroid factors over time. And that's why trademark is always temporal. How do you ever get finality in a claim like this? Well, two things. You don't get finality if there's subsequent infringements. If there's no release, you can keep suing over additional infringements. But you get finality here, which is why this shouldn't be the trademark version of Charndis v. Jarndis, because of the settlement agreement. And the settlement agreement from 2003 released future claims with regard to the Lucky Brand marks. And the Augustine decision is very helpful there, because the language is very much the same. If that was so, how in the world did the jury come make a finding for the other side in the subsequent litigation? Because in that— They didn't press this point with them. You're right, they didn't. But it doesn't—and as strange as it sounds, and we can all say they should have, and if they had, they might have won the case. But that doesn't mean that they're forever stopped from this case. There's no claim preclusion. It might have won the case. That would have settled that whole dispute back in 2009. We wouldn't be here now. Well, not completely, Your Honor, because there were more— There would have been another lawsuit. There were more marks at issue in the 2005 case. There was also the Get Lucky marks. And I think it's really important that you go back and look at the procedural history of the prior—of the case that gave rise to the settlement agreement. Because in that case, Marcell only has rights to Get Lucky. That's its only trademark, Get Lucky. So when it sued originally, it was about Lucky Brands using, at that time, Get Lucky. There was nothing in the original lawsuit that gave rise to this about any of the Lucky Brand marks. That was not sued on. They were only suing on Get Lucky. And they won on that? No, no. The original lawsuit that gave rise to the settlement agreement, it was settled. There was no final decision. So you paid them money and— Paid them— —and you claim you had everything else. Paid them money. The deal was there would be an agreement not to use Get Lucky in the future. That's in the settlement agreement. We won't use Get Lucky in the future. But with regard to any marks owned, registered, or used by Lucky Brands prior to the date of that settlement agreement, those claims were released. And anything relating to or arising out of those prior acts— That's what Judge LaValle said. To assume that this was—you could use it forever was just—it makes no conceivable sense. That's the language he used. But he was talking about it in a different context. He was—the key difference there— This is what he was talking about. He said, to construe the lump sum judgment in Marcell's favor for Lucky Brands' prior infringements of Marcell's Get Lucky mark as effective authorization to Lucky Brand to infringe Get Lucky at will and without compensation forever into the future makes no conceivable sense. And he was right, but he was talking about something different. The language Your Honor just quoted was about the 2005—the jury verdict in 2010 from the second litigation in 2005. He was saying the idea that Marcell would be stopped from being able to—because remember, they couldn't bring new claims. Now, that's what he's talking about. That's obvious. I mean, based upon subsequent infringements. Right. Subsequent—that's right. He was saying if there were subsequent—but that doesn't— It's a mistake of the district court to think that somehow there was res judicata there when new cases were coming up all the time with new infringements. Right. But we're not talking about—and if there wasn't the settlement agreement, you're absolutely right. That was a mistake. But because—and so that was right. The second—this Court's prior opinion I'm not quibbling with, nor can I. But what I am saying is that this Court's prior opinion is instructive because it even describes the settlement agreement using the same exact way Judge LaValle did that we are talking about here. He wrote in his opinion for the Court that the settlement agreement acknowledged Lucky Brand's right to use, license, and or register the trademark Lucky Brand or any other trademarks registered or used— There's no question that if there's no bar by either waiver or res judicata, the settlement agreement language would control. Their whole defense here is that that was waived by you or is barred by you under rules of res judicata because of what you did in the second litigation. And it's a very simple case that way. Either there is a bar or there isn't. And if there isn't, then you win. If there is a bar, they win. Fair enough. And I know my light's on, so I'll just close with— I'll just close with the fact we know there isn't a bar because they can't have it both ways. In the previous case they said, in this Court, in the previous appeal in this case before where Judge LaValle wrote the opinion, they argued that there shouldn't be res judicata. And Judge LaValle's whole opinion was these are new infringements, these are new claims. If they're new claims and they're new infringements, it's a new case. Different claims means no claim preclusion based on the second opinion from 2010, and that is the Davis Supreme Court case that said—it used the word demand, but it said because the original demands were about certain notes and they didn't raise a contract defense back in the first case involving certain notes and they didn't raise that contract defense that they would have won on, but they did when they were sued on different notes, additional notes in the same sequence covered by the contract. The Supreme Court said it's okay for you to raise that defense now, even though you could have raised it earlier and might have won, because it's a different demand, it's a different claim, and so, too, under the reasoning of this Court, this is a different claim and we're entitled to raise the settlement agreement and this case should end. Thank you, Your Honor. I think everybody can agree that this case should end. The complaint was filed in 2001. The question is how should it end. Your Honor, I'd just like to address that— You can raise the whole podium. No, that's fine. I'm good. I'd just like to address that last bit. Davis v. Brown is not controlling because in the second case, they brought technical defenses to the notes that were available in New York that were not raised in that first case. It was a different factual pattern, and that's why they held that the judgment in the first case could not be used in the second case, which is different here. In our situation, it's the same continuation of the 2005 case. Counsel continuously ignores the precedent that was set by the jury verdict finding new infringements. The language of our complaint in the second amended complaint is to enforce the 2010 verdict because we claim they are continuing the same infringing conduct that they had done in the 2005 case, which— because everything's new. Polaroid factors have to be applied, and it's a brand-new case, and therefore, you can't be— A prior claim would not be controlling. A prior disposition would not be controlling. Except for the fact that they're using the marks which they were enjoined from using in the prior case. The issues go to whether or not they have a right to use those marks. The defense would have been proper in the 2005 case. She admits they made a mistake. They waived it. They didn't bring it up. To be clear, you're saying there's a difference between the right to use the mark and the way in which a mark might be infringed. Absolutely. That could vary depending on the circumstances of a new case. Absolutely. The right to use the mark is something that is fixed in time. They were precluded from using it. By prior rulings. What about the ambiguity in the jury verdict? I don't think it's ambiguous at all. As I put it in my brief, I think it's clear that they were enjoined from using lucky brand marks or any word that used lucky. Total. I don't think that they distinguished between various marks. I think that's an encompassing verdict which they did not appeal. Didn't Marcel win in that lawsuit rights that they hadn't had before the lawsuit? They won on reverse confusion that the defendant were so intertwined the use of their lucky brand with get lucky in their advertising campaign so as to completely and indelibly link the source of the goods using get lucky to the defendant who is the junior user of the mark rather than Marcel. And, in fact, ripped away the goodwill and the ability of Marcel to build its brand. That was the finding of the jury. That was in the case that was in the counterclaim, paragraphs 53 through 56. The jury found that reverse confusion had occurred and that as a remedy for that, that they were enjoined from using lucky brand marks or the word lucky. And that is what we are here today about is that we sued them for their use of the marks, not for different various use of the lucky brand. They had the ability to go their own separate way back in 2003, but they chose not to. They continued to breach the agreement and use the marks in such an infringing manner that the jury found that they are no longer entitled to use those marks because they completely have infringed the rights of Marcel, and that's the difference. This defense would have been relevant at the time of the second trial. Defendant Apelles chose not to bring that in front of the jury. That was a choice. That's a strategic choice, and now they're trying to make up for it here in this case by raising that issue, completely ignoring the precedental value of the 2010 judgment. They didn't challenge the verdict? No, they did not. And they actually agreed to the language that was contained in the judgment. It was a joint language that was crafted between the two sets of attorneys. They also agreed to waive the right to appeal. So they understood what it meant at the time and what the effect is, and now they're trying to ignore that in this action. Thank you, Your Honors. Thank you both. Very lovely discussion. We will reserve judgment.